Good morning, Your Honor. My name is Teresa Riedel and I represent Daniel Lewis, the appellant in this case. I think, like my colleagues before me, we'll start off with the Blakely issues unless you've got any other questions you'd like to start off with. When I was reading the Blakely case, the thing that popped out at me first was Scalia's description of what an absurd result is and his words were that an absurd result would be where a judge instead of a jury could sentence a person for a murder when he was only convicted of possessing a firearm that was used to commit the murder. And the reason that struck out at me obviously is because that's similar to what happened in Mr. Lewis's case. He was charged with one sentencing. His sentence was enhanced. They added 20 points to the calculation based on a cross-reference to a federal statute that cross-referenced another statute that had the grid for how much in damages was caused to the pipeline. So the base offense for the minimum was 57 to 71, but after considering Blakely and rereading all of the record in the brief, I think the more appropriate is the base level offense of 14. You've probably been thinking about this issue that we raised with the attorneys in the case before yours. If you have anything to add on the Agostini problem, go ahead. That's the problem that... You know, I don't have anything to add beyond what everybody else has talked about. But I do think that the same reasoning applies to the federal sentencing guidelines. And because I don't see a substantive difference between the two sets of schemes where a jury is not finding these enhancements at the standard of beyond reasonable... I wondered if there's a difference because under the guidelines, under the Washington scheme as the Supreme Court described it, there really was a maximum. Even though the statute says 20 years in one of the applicable statutes, it says in another one 47 months or something like that. And that's a real maximum. The judge just can't sentence to more than that without a particular finding of fact. But my impression of the guidelines is that they have more play in the joints, that the numbers that they give before adjustments and departures are not so absolute. And the room for departures and adjustments is more liberal and does not necessarily involve findings of fact of the same sort that Washington did. I'm not sure that plays as new to me as it is to you. Yeah. And in thinking through that, what I did was I've obviously gone to see if any circuit courts have had any decisions on Blakely, and they haven't. I found four U.S. District Court decisions passing on the constitutionality of the federal guidelines. And all four decisions held that they are unconstitutional. And what they did was sentence the remand for resentencing, and they sentenced him at the base level offense. So I think... I don't quite get why, if the guidelines are unconstitutional, you use the guidelines and use the lowest level. Well, I think maybe... It seems like what you do is just say, well, gosh, the statute says anywhere up to 10 years, guidelines are unconstitutional. I'll sentence like I did before 1987. Unless what the Supreme Court could say is that the entire set of guidelines is not unconstitutional. It's only that portion of the guidelines that deal with the enhancements, because the jury is not finding these enhancements beyond a reasonable doubt. And it had such an impact on Mr. Lewis's sentence, because he would have only served three to four years at the base level offense. But when you add these enhancements, his sentence was more than double, or more than tripled, actually. So it's quite an impact. And he just never charged with those crimes. The U.S. attorney could have charged him with the federal statute, but they, for whatever reason, chose not to. The U.S. attorney, in their briefs, talk about how, well, he wasn't really... The sentence wasn't enhanced under the federal statute. It was actually under the state statute. And there's some ambiguity in that, because in the first sentencing hearing, he clearly talks about the state sentencing statute. However, in the second sentencing hearing, he just says, I hereby adopt the guidelines. Well, he didn't say that, but the box was checked, and so it was a little confusing. But in any event, he wasn't convicted of the state statute either. Hi there. The four cases you talk about, I'm aware of the Utah and Oregon cases. Where are the other two from? The other are... I was wondering if it's different circuits. There's one Southern District of New York, Eastern District of New York, West Virginia, and Utah. And there's also now one in Oregon. And I haven't seen that one yet. Okay. So, are there any questions on the Blakely issues before I get to the others? Next, I'd like to kind of back up, obviously, and talk about the trial itself. Like I said before, the only charge against Mr. Lewis was that of being in possession of a firearm. And what they did was basically put him on trial for shooting the pipeline. And it's important that everybody kind of back up and realize that there are only two eyewitnesses to this event. Danny Lewis, my client, and Randy Lewis, his brother. There's some great circumstantial evidence for which one of them shot it, and that was the blood all over his face from the scope hitting him in the face. Right, but there's also other ways. He also had that three-wheeler accident where the brother helped him wipe up the blood as well. So, the circumstantial evidence, depending on whether or not you believe the brother's story. I would have thought a jury would have thought, well, they're all a bunch of liars and not believe any of them, and instead believe the reasonable inference from who had the blood on his face from shooting that big rifle. Correct, but like Danny's attorney, and I don't mean to be flippant when talking to Danny and Randy, but it gets really confusing if you use their names. Sure. Yes, but there also is other circumstantial evidence and other evidence that perhaps would have stood out more in the jury's mind had they, well, this kind of gets me off the track, but I'm going, I guess, now to the new trial issue. Had they heard Randy's confession, that certainly would have undermined his credibility, and they certainly would have taken a new look at this evidence. Other things that haven't jumped out too much in the briefs, but there is the fact that there were no fingerprints found on the gun. The tire tracks that were made and found next to where the gun was found were excluded as a match from Danny's. So just, you know, a different spin can be put on all those little pieces of evidence. What were you saying about the confession? The new trial issue, the defense attorney had sought... The sister says... Right, the sister said that Randy confessed to her that he actually... Oh, it's not Randy's confession, it's the sister's statement that Randy said he'd done it. Yes. I get it. And so, back up to the issue of the trial itself, where there are only the two eyewitnesses, yet the prosecution puts 24 people on the stand, 14 of which were law enforcement officers and security personnel. Keep in mind, they didn't see anything happen, they never saw Danny with a gun, and they didn't see him throwing a gun. The only person that saw him supposedly was Randy. Yet, they put these 24 people on the stand to basically prove that Danny shot the pipeline, but that was not the charge. So it was extremely prejudicial for him to have photographs of the oil shooting out, the topography blackened by the oil, the picture of Randy's dog with oil on him, the testimony talking about the dangers to the Alyeska Pipeline personnel, the possibility that they were going to be exposed. Would it have mattered? I mean, you'd have to try this case in Kimbuk, too, for people... Well, I think it's reasonable to expect, and I think during the voir dire, it was obvious the jury knew the pipeline was shot. It was just... And they could have brought it in, and they did have evidence that was what we termed as the benign evidence that they did bring, like there were close-ups of the hole in the pipeline. No spewing oil, nothing like that. So they could have showed, yes, the pipeline was shot, but they just went too far in the evidence that they did present. My time is up, so... Thank you, counsel. Your Honors, I'm Karen Leffler, Assistant District Attorney, Anchorage, on the Lewis case. I was the trial attorney for the government on that case. If I can start, I'd like to sort of go backwards and start with a new trial motion and just correct a couple of facts. One is the picture of the hole that didn't have oil in it was a picture of the hole in the vertical support member used to corroborate Randy because he had said his brother had shot a hole about four and a half feet up. And there was a picture... It was corroborating him because the police actually found the hole in the vertical support member. That wasn't the hole that the oil had come out of. And there was also pictures to show that it went in about a half an inch, which was the thickness of the pipeline where the gun penetrated it. The law enforcement personnel that were called, actually they were Doyon security people, and in addition to the point that Judge Kleinfeld made that the defendant had something that looked like a scope cut and blood on the gun that was Danny's, it was also a very key issue that where the rifle was found was north of a point that Randy could have had it. And so the law enforcement people or the Doyon security people were all coming in to show that the area had been secured off and that Randy couldn't have put the gun there, only Danny could have had it. What accounts for the lack of fingerprints on the gun? Actually, it's kind of an odd thing. The government had called a witness to testify that it's very common that there are no fingerprints. I mean, it's a very small percentage. The judge actually excluded that witness's testimony, so I can't point in the record. The witness was actually called. The record will show he was on the stand, and the judge said he couldn't testify to that. So if you're asking me the question, I don't have the answer in the record other than the fact that lots of times there are no fingerprints on matters. That's a pretty common thing. And then the other thing is that for the new trial motion is that there wasn't a confession from Randy. I think it's a misnomer to refer to it as Randy's confession. What we had, what was before the judge originally, was an affidavit not of the witness who's supposed to be recanting. It was not even of the witness who said the other witness recanted. It was an affidavit of counsel saying, and it's paragraph nine of that affidavit that for the first time says, it's all the way at the bottom of all the other things that Lisa, the sister, is supposed to have said, where the affidavit says, oh, and she also said that he bragged about shooting the pipeline. And on that record, the court said, you don't get a hearing. The other thing I want to point out, which is relevant in sort of to two discussions, is that there actually, in essence, was a hearing. Because at the sentencing, Lisa was called to say that, oh, yes, Randy said he confessed. And when she testified, the court made a specific finding, which the judge had the power to do, saying that she wasn't credible. So this is actually a situation where the witness, where they didn't have the hearing but the person testified anyway on the same issue, and the judge said she wasn't credible because she had very little recollection of anything other than that statement. Does the court have any question on the new trial or those issues? If not, I will go very briefly to the Blakeley issue, which has really been argued by Ms. Heller in the other case. Okay. On the Blakeley issue, I will say here, this is not something where the court asked us to supplementally brief here. So we're standing in front of the court. There was no – the sentencing issue below was not a Sixth Amendment issue. I mean, the defense has not – didn't raise a Sixth Amendment issue as to the sentencing. More importantly here, we actually did have a jury finding beyond a reasonable doubt before the final sentence was imposed. The defendant was convicted in state court of the very offense that was used for the cross-reference in the federal case before the final sentencing. Oh, so if we got to the Blakeley issue, here there actually is a determination beyond a reasonable doubt by a jury. Yeah. There's a chronology here. I'm sorry. Yes, that's exactly what happened. What happened is the judge wanted – the defense wanted the state trial to finish before the judge sentenced because the whole issue was going to be the cross-reference. Everybody knew it. And what happened is the state case kept getting continued again and again, and finally Judge Sedgwick said, I'm not waiting any longer. And he said, I find Randy credible, and he was corroborated in every way. But he continued the sentencing until after the state – not only the state trial, but the state conviction in order to be able to make the sentences concurrent. So by the time the final sentence was imposed, there was not only a state conviction on exactly the statute the judge relied on. There was also a state sentence.  I believe, if I have the right term, it's like damaging an oil facility, I think is the term under state law. I have the state statute cited in my brief. And that was before the federal sentence? Before the final federal sentencing, that's right. So it's kind of like if everybody had known Blakely was coming, that's what they would have done? Well, the only difference is it was a different jurisdiction that tried him, but there's a jury verdict. And, of course, Blakely doesn't call into impact using priors in another district. So I have a uniquely distinguishing factor in this case. That is, actually. Yeah. It's kind of gratuitous. Yeah. It just so happens he was convicted of that. And that's the point here. When you're talking about – it actually goes to another thing. There were three fact finders, in essence. We've got the federal jury, a state jury, and the judge saying, in essence, that Randy, despite being an alcoholic and all, was credible. Furthermore, what's the state sentence longer than the federal sentence? It's the practical matter of the state sentence. They're going to come out about the same. I believe the state sentence was, I think, 15 years with five suspended. No, I think it ultimately was 15 years. The state has parole. The feds don't. I think they're going to ultimately end up practically about the same. So you get one-third off the state sentence. Yes, except you don't get parole during – they get one-third off for good time. This is going back to my DA days. It's a long time ago. But I think they get one-third off good time. Parole is eligible in the state, but not when you're presumptive. And he was serving a lot of presumptive time in state court because I think he had 30 prior convictions for various things in state court. So it's a little hard to calculate. It's one-third off good time. We do 52 days a year. But you can't start earning the parole until the presumptive is done. If I have all this right, it's very confusing. I calculated it was going to end up about the same. And they were concurrent sentences. Again, I think that the arguments on Blakely are really, as Ms. Heller put before you, are the ones that should be argued. The only other thing I would add is, and that is in somewhat a response to Judge Wardlow's question about, you know, predicting the outcome of the Supreme Court, I'm going a little bit to the Almendez-Torres issue. When after Apprendi came out, everybody, we had zillions of motions saying Almendez-Torres is going to be overruled. Because I think we had Judge Thomas saying, gee, I'm not even sure I decided that right. And it's never happened. And I think every court, this court, and everybody universally has said, going back to Judge Kleinfeld's issue, that, well, maybe it will and maybe it won't, but for now it's good law. And that was kind of my, I was thinking when you had asked that question, that that was the same prediction everybody made off of, I believe Judge Thomas had said at one point, gee, I think maybe I decided Almendez-Torres is wrong, and it was a 5-4 decision, but it's never been overruled, and everybody said, well, then it's the law. So that was the only other thing that I could really add to that. If the court has any questions, otherwise I'll rely on the briefs. Thank you, counsel. Thank you. United States v. Ward was submitted.
judges: Hall, Kleinfeld, Wardlaw